USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __03/31/2025____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TEKO FOLI,

               Plaintiff,

    -against-

METRO-NORTH RAILROAD and METRO-
NORTH MTA POLICE,
                    Defendants.

No.: 23-cv-05982-NSR

**OPINION AND ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Teko Foli, proceeding *pro se*, commenced the instant action on July 12, 2023[1] pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the Fourth and Fourteenth Amendments of the U.S. Constitution, and the Federal Employers' Liability ("FELA"), 45 U.S.C. §§ 51–60, for negligent infliction of emotional distress ("NEID") and intentional infliction of emotional distress ("IIED").

Presently before the Court is Defendants' motion to dismiss all claims in Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") . For the reasons set forth below, Defendants' motion is GRANTED as to the Fourteenth Amendment and FELA claims and DENIED as to the Fourth Amendment claim. Plaintiff's Fourteenth Amendment claim is dismissed without prejudice to allow Plaintiff an opportunity to clarify the basis for that claim.

## FACTUAL BACKGROUND

The following facts are derived from the First Amended Complaint ("Am. Compl.") and the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opp. Mem.") and are taken as true and constructed in the light most favorable to the Plaintiff.

---

[1] Initial complaint was filed on July 12, 2023, and First Amended Complaint was filed on March 19, 2024.

Plaintiff, Teko Foli, was employed by Metro-North Railroad as Field Equipment Engineer, with his work primarily conducted at Metro-North's Croton-Harmon yard, where he occupied a cubicle in one of the trailers used by engineering personnel. (Am. Compl. ¶¶ 2-3.) Defendants, Metro-North Commuter Railroad Company, and Metro-North MTA Police (collectively "Metro-North" or "Defendants") are public benefit corporations and subsidiaries of the Metropolitan Transportation Authority ("MTA"). *See* N.Y. Pub. Auth. Law §§ 1263(2)(McKinney 2009), 1266(5); N.Y. Comp. Codes R. & Regs. tit. 21, § 1085.1(a).

Between April and December 2022, Plaintiff alleges that he was subjected to false accusations by Defendants, including the dissemination of company information to unauthorized users, identity theft, drug use, and reporting company violations. (Am. Compl. ¶ 3.) Plaintiff claims that these accusations were used to justify workplace searches. (*Id.*) Beginning in June 2022, Plaintiff became aware that his computer and phone activity were being monitored, and that his work bag was being searched, with items removed and later replaced. (*Id.* ¶¶ 5, 20.)

**Alleged Medical Conditions Stemming from Contact with Prescription Bottle**

On June 14, 2022, Plaintiff alleges that while reaching into his work bag for his prescription bottle, he experienced a painful sensation, followed by a severe reaction that resulted in multiple medical conditions that required him to take time off work. (*Id.* ¶ 11.) Initially, Plaintiff described feeling a "rush of live micro-organisms crawling on his skin with piercing sensation." (Am. Compl. ¶ 11.) In his subsequent pleading, he described "a swarm of tiny beings over his body that pierced his skin and caused pain, itching, sickness, a cut in his left eye, as well as permanent and severe dry eye and a long list of health issues, emotional distress and mental anguish." (Opp. Mem. at 16.)

Plaintiff attributes multiple medical conditions to this incident. On June 28, 2022, Plaintiff emailed his supervisor, Mr. Gustavson, informing him that he developed "symptoms" after accessing his work bag. (Am. Compl. ¶ 17.) The next day, he tested positive for COVID-19. (*Id.* ¶ 18.) Plaintiff also claims that he was diagnosed with dry eye syndrome, uveitis, scleritis, and experienced temporary vision loss. *(*Opp. Mem. at 20.) Moreover, Plaintiff expressed his intent to include a diagnosis of lamellar macular hole in his right eye. (*Id.* at 23.) Plaintiff alleges that these conditions are a result of the "physical impact" with his prescription bottle caused by Defendants' negligence. (*Id.)*

**Alleged Conduct Perpetrated by Defendants' Employees**

Plaintiff alleges that on the day following his June 14th contact with his prescription bottle, Defendants implemented procedures requiring non-agreement employees, like Plaintiff, to notify supervisors before taking leave. (Am. Compl. ¶ 12.) In the same email, he was also informed that supervisors had the right to dock pay if employees failed to complete 40 hours of work. (*Id.)* Following the June 14th contact with his prescription bottle, Plaintiff was on Family and Medical Leave Act ("FMLA") leave for approximately three of the following four months. (*Id.)* During this time, despite Metro-North's policy allowing non-agreement employees to take four consecutive sick days without a doctor's note, Plaintiff's pay was docked multiple times for single-day absences. (*Id.* ¶ 13.) He also alleges that he faced disciplinary actions for his use of FMLA, despite his understanding that company policy prohibited disciplinary action for work-related injuries. (*Id.* ¶ 30.) Plaintiff contends that these policy changes were designed to control his use of FMLA and to restrict his ability to take leave. (*Id.* ¶ 13.*)

On September 10, 2022, Plaintiff requested that his supervisors, Craig Gustavson and Maurice Divers, fill out a work injury report for the June 14, 2022 contact with his prescription

botte as required by Metro-North FMLA procedures, but they refused to do so. (*Id.* ¶ 25.) Instead, Plaintiff redirected his request to Mayela Clarke of Human Resources who informed him that his department had already completed the report, and if he wanted a copy, he would have to request it using a Freedom of Information Act request. (*Id.*) Plaintiff requested the report and received it ten months after. (*Id.*)

On September 12, 2002, Plaintiff informed Mayela Clarke of Human Resources of his intent to initiate an investigation by the MTA Police to "investigate his complaints and circumstances of his injuries [from the contact with his prescription bottle]." (*Id.* ¶ 26.) Two days later, Mayela Clarke requested Metro-North Security Department to launch an investigation into Plaintiff's allegations. (*Id.*) Plaintiff describes it as delayed, noting that the investigation was initiated three months after the incident occurred. (*Id.*)

On October 10, 2022, Daniel Malarkey of the Metro-North Security Department conducted a recorded interview with Plaintiff as part of their investigation. (*Id.* ¶ 28*.*) During that interview, he was informed of the surveillance of his workspace and investigating his personal belongings. (*Id.*) On November 3, 2022, Metro-North Cybersecurity Investigator Mordecai Kraushar also informed Plaintiff that his work bag had been searched because of allegations of identity theft. (*Id.* ¶ 33.) On his final day of employment with Metro-North, Plaintiff received a "verbal result of no finding" from unidentified individuals. (*Id.*) Plaintiff believes that the investigation was untimely, as it concluded five months after the June 14, 2022, incident involving his prescription bottle. (*Id.*)

On October 6, 2022, Plaintiff went to OHS to obtain a clearance to return from work, which required Plaintiff to submit an MD1 form completed by his eye doctor. (*Id.* ¶ 29.) During his visit, Plaintiff alleges that Dr. Ronda Whitley advised him to provide a clean copy without pen markings, as the form "would likely be used in court." (*Id.*) Plaintiff states that he crossed out certain parts

of the report because "his eye doctor incorrectly wrote them in the employee's section of the MD1 form." (*Id.*)

## PROCEDURAL HISTORY

Plaintiff commenced this action on July 12, 2023, by filing his Complaint. (ECF No. 1.) Plaintiff subsequently filed an Amended Complaint on March 19, 2024. (ECF No. 52.) On August 15, 2024, Defendants filed a motion to dismiss and a memorandum of law in support. (ECF Nos. 85-86, "Def. Mem.") Plaintiff filed a memorandum in opposition to Defendants' motion to dismiss on August 22, 2024. (ECF No. 94, "Opp. Mem.") Defendants subsequently filed a reply. (ECF No. 91, "Def. Reply.")

The Court also notes that Plaintiff also filed additional documents beyond what was allowed by the Court. The record reflects that Plaintiff filed a Proposed Second Amended Complaint without leave from the court (ECF. No. 89) and submitted a response to his own filings. (ECF. No. 100.) Accordingly, the Court will not consider these filings as they were submitted beyond the scope of what was permitted.

## LEGAL STANDARDS

### *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides in relevant part that a party may move to dismiss for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009). A claim is facially plausible when the plaintiff pleads facts sufficient to allow a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While courts are obligated to accept all factual allegations in the complaint as true, those courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678.

### Pro Se Pleading Standard

In cases involving pro se plaintiffs, courts apply "less stringent standards than those drafted by lawyers." *Thomas v. Westchester County,* 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013). In accordance with this standard, courts construe their submissions liberally and interpret them to raise the strongest arguments they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994). Additionally, courts may "consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). However, even under this liberal standard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice*." Chavis v. Chappius,* 618 F.3d 162, 170 (2d. Cir. 2010) (internal quotation marks omitted).

### Federal Employers' Liability Act (FELA)

FELA holds common carrier railroads liable for work-related injuries suffered by employees if the railroad's negligence caused the injury "in whole or in part." 45 U.S.C. § 51. FELA imposes a continuous duty on employers to provide a reasonably safe workplace for employees. *DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R.,* 237 F. App'x 642, 645 (2d Cir. 2007). A viable FELA claim requires that a Plaintiff plead sufficient facts to demonstrate that: "(1) he or she sustained an injury, (2) while employed by a carrier engaged in interstate

commerce, (3) due to the carrier's negligence, and (4) that such negligence played a role in plaintiff's injury." *Marchica v. Long Island R. Co.*, 31 F.3d 1197, 1202 (2d Cir. 1994); *see also Tufariello v. Long Island R.R.*, 458 F.3d 80, 87 (2d Cir. 2006) ("In FELA actions, the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation."). However, "courts apply a more relaxed standard of both negligence and causation to FELA negligence claims than to those arising under common law*." Coale v. Metro-N. Commuter R.R. Co.*, 621 F. App'x 13, 14 (2d Cir. 2015); *see also Kernan v. Am. Dredging Co.*, 355 U.S. 426, 438–39 (1958) ("The theory of the FELA is that where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues."). This reduced burden reflects FELA's remedial "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329 (1958).

## DISCUSSION

### I.    §1983 Claims

Pursuant to Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege: "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct

deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

Because Metro-North qualifies as a state actor, Plaintiff has satisfied the first element of a § 1983 claim. *See* N.Y. Pub. Auth. Law § 1261(16) (stating that "'State agency' shall mean any . . . public benefit corporation . . . of the state"); N.Y. Comp. Codes R. & Regs. tit. 21, § 1085.1(a) ("Metro-North . . . is a public benefit corporation and an independent subsidiary of the Metropolitan Transportation Authority.") Accordingly, our analysis focuses on the second element—whether the alleged conduct resulted in the deprivation of rights guaranteed by the U.S. Constitution.

Plaintiff asserts a claim pursuant to the Fourth and Fourteenth Amendments. Based on the analysis below, the Court concludes that Plaintiff's Fourth Amendment claim states a plausible basis for relief, and therefore, survives the motion to dismiss. However, the Plaintiff's Fourteenth Amendment claim, as presently pled, lacks sufficient specificity to state a viable claim. Accordingly, the Fourteenth Amendment claim is dismissed without prejudice.

### A.    Fourth Amendment Claim

Plaintiff alleges that Metro-North, acting as a state actor, conducted intrusive searches based on false accusations, violating his Fourth Amendment right to be free from unreasonable searches and seizures. (Am. Compl. ¶ 42.) The Fourth Amendment protects individuals from unreasonable searches and seizures, a protection that extends to government employees in the workplace. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010). This protection extends beyond the sphere of criminal investigations. Id. at 755 citing *Camara v. Municipal Court of City and County of San Francisc*o, 387 U.S. 523, 530 (1967). The protection is applicable when the government acts in its capacity as an employer, requiring that workplace searches be assessed

under Fourth Amendment principles. *Id.* An individual does not forfeit Fourth Amendment rights merely because they work for the government instead of a private employer." *Id.* at 756 quoting *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987).

Warrantless searches are per se unreasonable under the Fourth Amendment unless they fall within an exception. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception applies in the government workplace, where the Supreme Court has recognized that the "special needs" of the workplace justify a departure from the usual warrant and probable cause requirements. *O'Connor v. Ortega*, 480 U.S. at 725. In assessing a Fourth Amendment claim under this exception context, courts employ a two-step analysis. *Quon* 560 U.S. at 756-757. First, the employee must demonstrate a reasonable expectation of privacy in the area searched. *Id.* This determination is made on a case-by-case basis, considering the "operational realities of the workplace." *Id*. If such an expectation of privacy exists, the inquiry shifts to whether the search was "reasonable[] under all the circumstances." *Id.* at 757.

Here, Plaintiff alleges that while working he was the subjected to intrusive searches of his work bag, phone, and computer. (Am. Compl. ¶¶ 5, 33, 42.) The Supreme Court has recognized that employees retain an expectation of privacy in person belongings, such as handbags or briefcases, in the workplace. *See O'Connor*, 480 U.S. at 716 (distinguishing between an item's outward appearance, which might be subject to observation, and its contents, which generally remain private). The Court further noted that workplace search standards do not necessarily extend to closed personal items merely because they are located within an employer's premises. *Id.* Considering this precedent, Plaintiff maintained a reasonable expectation of privacy in his work bag, at a minimum.

If an employee has a reasonable expectation of privacy, the next step is to assess whether the employer's search was reasonable given the circumstances. A workplace search is reasonable when it satisfies both prongs of the *O'Connor* test: (1) it is justified at its inception, meaning there are reasonable grounds to suspect the search will yield evidence of work-related misconduct or is necessary for a legitimate, non-investigatory work-related purpose, such as retrieving a needed file; and (2) it is reasonable in scope, meaning the measures adopted are reasonably related to the objectives of the search and not excessively intrusive given the nature of the alleged misconduct. *Id.* at 726; *see also Quon*, 560 U.S. at 764 (reaffirming the *O'Connor* framework, holding that where a search is motivated by a legitimate work-related purpose and is not excessive in scope, it is constitutionally reasonable).

As previously stated, accepting the factual allegations in the complaint as true, as the Court is required to do when resolving a Rule 12(b)(6) motion, Plaintiff has alleged a plausible Fourth Amendment claim.

It may very well be that the Defendants have proper justification for the alleged searches, though none has been provided. (*See generally* Def. Mem.; Def. Reply.) Without ascertaining the basis for the searches, there is no way to determine whether they were justified at their inception or reasonable in scope. Nor have Defendants presented evidence as to whether the Plaintiff was subject to any workplace policies that might have advised him of a diminished expectation of privacy. *Cf. Quon,* 560 U.S. at 751 (providing notice to employees that they did not have expectation of privacy when using employer's network). Given this lack of information, dismissal at this stage of the proceeding would be inappropriate. Plaintiff has plausibly alleged that he had a reasonable expectation of privacy in his work space and bag, and that Defendants' alleged searches may have been unjustified and intrusive. *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Consequently, Plaintiff's Fourth Amendment claim survives Defendants' motion to dismiss pursuant to Rule 12(b)(6).

### B.    Fourteenth Amendment Claim

Plaintiff alleges that "based on the facts in [his complaint]," his Fourteenth Amendment rights were violated. (Am. Compl. ¶ 40.) However, this conclusory allegation fails to satisfy the pleading standard. Pursuant to the Fourteenth Amendment of the U.S. Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  A Fourteenth Amendment claim may proceed under either: (1) procedural due process, which requires the deprivation of a protected liberty or property interest without adequate state remedies, *see Mathews v. Eldridge*, 424 U.S. 319 (1976); or (2) substantive due process, which requires conduct that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998).

Here, Plaintiff has not identified a specific property or liberty interest allegedly infringed upon, nor has he asserted which conduct "shocks the conscience." (*See generally* Am. Compl.; Opp. Mem.) Instead, his claim is grounded on the statement that "based on the facts in [his complaint]," his Fourteenth Amendment rights were violated. (Am. Compl. ¶ 40.)  Such a vague and conclusory claim is insufficient to meet the pleading standard. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the Court must construe *pro se* pleadings to present the strongest possible arguments, it cannot create factual allegations that were not asserted.

Accordingly, because Plaintiff failed to plausibly allege sufficient facts to support his Fourteenth Amendment claim, the claim must be dismissed without prejudice.

## II.    Claims under FELA

Plaintiff contends that his injuries stem from a "physical impact" and thus his FELA claims for NIED and IIED should proceed. (Opp. Mem. at 18.) However, his alleged physical impact fails to meet the requirements of the zone of danger test. Moreover, even if the physical impact were sufficient, Plaintiff has not plausibly alleged facts establishing a causal link between Defendants' negligence and his claimed injuries. As a result, his emotional distress claims cannot survive.

In emotional distress claims under FELA, the Supreme Court has established two categories of injuries: "stand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test; and emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted." *Norfolk & Western Ry. Co. v. Ayers,* 538 U.S. 135, 147 (2003). This limitation is consistent with FELA's underlying intention to protect railroad workers from the physical perils of their work. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. at 555 ("We have recognized that FELA was intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work . . . ."). Thus, the Supreme Court has limited claims for emotional distress brought under FELA only to those plaintiffs in the "zone of danger." *Id.* at 557; *see also Higgins v. Metro-North R.R. Co.,* 318 F.3d 422, 430 (2d. Cir. 2003) (Sotomayor, J. concurring) (concluding that the zone of danger test is appropriate for both NIED and IIED claims brought pursuant to FELA). Accordingly, because Plaintiff asserted claims for NIED and IIED under FELA, this Court will proceed with the application of the zone of danger test to his claims.

Under the zone of danger test, Plaintiff's claims fail for two reasons: first, he fails to establish any physical impact, and second, he does not impute any negligence to his employer. To recover for either IIED or NIED under the zone of danger test, Plaintiff must show that he either

(1) sustained a physical impact due to the defendant's negligence or (2) was placed in immediate risk of physical impact. *Gottshall*, 512 U.S. at 534. The threshold question, then, is whether Defendant's alleged negligence caused a physical impact or placed Plaintiff in imminent risk of one. *See Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 813 (7th Cir. 1985) ("FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact."). Here, Plaintiff neither alleges nor provides evidence of a physical impact that meet this threshold. Moreover, the facts do not suggest that Defendants' negligence created any physical impact, or apprehension of it. Without either of these elements, Plaintiff's claims under the zone of danger test are not actionable.

In *Metro-North Commuter R.R. Co. v. Buckley*, the Supreme Court clarified that "physical impact" does not encompass "every form of physical contact." 521 U.S. 424, 432 (1997). Specifically, it excludes "simple physical contact with a substance that might cause a disease at a substantially later time . . . ." *Id.* at 430. There, the plaintiff was exposed to asbestos, a substance known to cause serious health conditions, but was denied recovery because he had not manifested any physical symptoms. *Id.* at 427. In contrast, Plaintiff in this action alleges that his injuries were the "direct consequence of the physical impact with [his] prescription bottle." (Opp. Mem. at 8); *see also* (Am. Compl. ¶ 11) (alleging that upon "grab[bing] his prescription bottle . . . [he] felt a rush of live micro-organisms crawling on his skin with [a] piercing sensation").

The disparity between *Buckley* and the present case is clear: Plaintiff was not exposed to a known hazardous substance like asbestos. Unlike *Buckley*, where his claim was based on potential future harm from exposure to asbestos, Plaintiff asserts an immediate and tangible physical impact from contact with a non-hazardous object. This distinction underscores that Plaintiff's allegations do not fall within the scope of *Buckley*'s definition of "physical impact," as his claim is not

premised on future harm from a known hazardous substance but on a subjective, present physical experience. Plaintiff's shifting narrative highlights the subjective nature of his allegations—initially claiming that he felt a "rush of live microorganisms crawling on his skin" (Am. Compl. ¶ 11) and later changing his version of events describing "tiny beings over his body that pierced his skin . . . ." (Opp. Mem. at 16.) However, neither interpretation establishes a cognizable physical impact caused by the negligence of Defendants in accordance with *Buckley*.

Plaintiff's FELA claims also fail because the allegations do not plausibly establish a nexus between Defendants' negligence and the alleged "physical contact" that led to his medical conditions. A carrier's duty under FELA encompasses only foreseeable events. *See Gallick v. Balt. & Ohio R.R Co.*, 372 U.S. 108, 117 (1963) ("Foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence."); *DeRienzo,* 237 F. App'x. at 645 ("For an employer to be found negligent [under FELA], the plaintiff must show 'reasonable foreseeability.'"). Here, Plaintiff's claims hinge on an implausible and unforeseeable chain of events, as he alleges various medical conditions resulting from mere contact with his prescription bottle and that Defendants are somehow responsible. (*See* Opp. Memo. at 7.)

Unlike cases in which an employer's workplace conditions render certain harms foreseeable, there is no plausible basis to expect the alleged harm here. *Cf. Marchica,* 31 F.3d at 1203 (finding the defendant negligent where the plaintiff was injured by a needle while clearing debris in a work environment controlled by the employer); *Gallick,* 372 U.S. at 108 (establishing negligence when Defendant should have foresaw that employee would be bitten by vermin when they had notice of their presence); *Grano v. Long Island R.R.,* 818 F. Supp. 613, 618 (S.D.N.Y 1993) (finding negligence when defendant should have foreseen the risk of tick bites causing Lyme disease amid its prevalence). In contrast, Plaintiff here engaged in routine, non-hazardous conduct

outside his duties as an engineer—contact with his prescription bottle—which does not present the same reasonably foreseeable danger. (Am. Compl. ¶ 11.) Because Plaintiff did not plead a plausible basis establishing a nexus between Defendants' negligence and his injuries, he does not have a viable claim.

Plaintiff's reliance on *res ipsa loquitur* emphasizes the weak nexus between Defendants actions and his alleged harm. In a last-ditch effort to attribute negligence to Defendants, Plaintiff invokes the doctrine of *res ipsa loquitur*, suggesting that they must be responsible for his harm because he sees no other explanation for his alleged injuries. (Am. Compl. ¶ 44; Opp. Mem. at 17.) This argument is misplaced, conclusory, and attempts to stretch legal principles beyond their intended scope.

To prevail in a claim under the theory of *res ipsa loquitur*, the Plaintiff must demonstrate that "(1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff." *Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 149 (2d. Cir. 2005). Here, Plaintiff's claim fails to satisfy the first element because he has not pleaded a plausible basis to infer that his injuries are of the kind that do not occur in the absence of negligence. In contrast with precedent cases where *res ipsa loquitor* applies, Plaintiff's alleged injuries resulted from contact with a prescription bottle, an event that does not inherently suggest negligence. *Cf. id.* (holding that the collapse of a chair under the exclusive control of the railroad warranted a *res ipsa loquitur* instruction); *Coale v. Metro-North Commuter R. Co.*, 621 F. App'x 13, 15 (2d Cir. 2015) (applying *res ipsa loquitur* where an oily substance on the floor in a restricted area suggested negligence). Moreover, Plaintiff's recognition that he was "predisposed to blindness" and had already suffered

15

temporary vision loss provides an alternate explanation for his alleged injuries. (Opp. Mem. at 21.) This alternative explanation negates any argument that his alleged injuries ordinarily do not occur in the absence of negligence. Without plausibly establishing this essential element, his invocation of *res ipsa loquitur* fails.

Alternatively, considering that his injuries were allegedly caused by his prescription bottle which Plaintiff asserted control over, his claim fails to meet the second element. *See Potthast*, 400 F.3d at 149 (requiring that the instrumentality which caused the harm to be "within the *exclusive* control of the defendant") (emphasis added). Here, his prescription bottle was under his control, and no evidence suggests that the defendant maintained exclusive control and access to the object at the time of the alleged injury. (*See generally* Am. Compl.; Opp. Mem.*)* Thus, Plaintiff's possession and handling of the prescription bottle that allegedly caused his injuries preclude the application of *res ipsa loquitur* to his claim.

Ultimately, Plaintiff asks the Court to stretch the alleged facts beyond what the law permits, inviting speculation rather than presenting a plausible claim. *See Chavis,* 618 F.3d at 170 (emphasizing that a court "cannot invent factual allegations that a [Plaintiff] has not pled"). The absence of negligence attributed to Defendants negates Plaintiff's claims, as FELA requires a clear causal connection between the employer's conduct and the plaintiff's injury. *Marchica*, 31 F.3d at 1202. Without factual support linking his alleged harm to Defendant's negligence, Plaintiff fails to establish an essential element of an actionable claim under FELA. *Ellis v. Union Pac. R. Co.*, 329 U.S. 649, 653 (1947) ("The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury.")

Thus, we conclude that Plaintiff failed to plead sufficient facts to state a viable claim pursuant FELA. This determination aligns with FELA's intention to address the inherent physical

dangers of railroad work, and the absence of an objectively verifiable physical peril places Plaintiff's claims outside the protection of FELA. *Gottshall*, 512 U.S. at 555. Considering this determination, we need not consider additional allegations that do not meet the zone of danger test, including allegations that he was being wrongfully investigated, threatened, and ridiculed. (*See generally* Am. Compl.; Opp. Mem.) Courts have consistently held that regardless of how egregious an employer's conduct may be, a plaintiff cannot recover for emotional distress under FELA without satisfying the zone of danger test. *See e.g., Goodrich v. Long Island R.R. Co.*, 654 F.3d 190 (2d. Cir. 2011) (holding that plaintiff failed to state an actionable FELA claim for emotional distress after his HIV-positive status was publicly disclosed by a co-worker because it did not meet the zone of danger test); *Gallimore-Wright v. Long Island R.R. Co.,* 354 F. Supp. 2d. 478, 487 (S.D.N.Y 2005) (finding no actionable emotional distress claim under FELA when Plaintiff alleged workplace harassment because it did not satisfy the zone of danger test).

## CONCLUSION

After review of *pro se* Plaintiff's Amended Complaint, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART. Specifically, the Court dismisses, without prejudice, Plaintiff's claim under the Fourteenth Amendment as well as his claims under  the Federal Employers' Liability ("FELA"), 45 U.S.C. §§ 51–60, for negligent infliction of emotional distress ("NEID") and intentional infliction of emotional distress ("IIED"). Defendants' motion is DENIED as to Plaintiff's Fourth Amendment, which survives.

Plaintiff is granted leave to file a Third Amended Complaint. *Pro se* Plaintiff will have until April 30, 2025 to do so, consistent with this order. Plaintiff is advised that the Third Amended Complaint will replace, not supplement, the Amended Complaint, and any claims he wishes to pursue must be included in, or attached to, the Third Amended Complaint. Should Plaintiff file a

Third Amended Complaint, Defendants are directed to answer or otherwise respond to the pleading by May 21, 2025, and the parties are directed to confer and file a Case Management Plan and Scheduling Order (blank form attached) by June 11 , 2025.

       If Plaintiff fails to file a Third Amended Complaint within the time allowed, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice. Defendants shall have until May 21, 2025 to file an answer, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by June 11, 2025.

       The Clerk of Court is kindly directed to terminate the motion at ECF No. 85.

Dated: March 31, 2025                      SO ORDERED:
White Plains, New York

                                        Hon. Nelson S. Román
                                        U.S. District Court Judge, S.D.N.Y.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

_____CV_____

(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes     ☐ No

# THIRD AMENDED
# EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 3/24/17

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

First Name                          Middle Initial              Last Name

Street Address

County, City                                        State                      Zip Code

Telephone Number                            Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Name

Address where defendant may be served

County, City                            State                      Zip Code

Defendant 2:

Name

Address where defendant may be served

County, City                            State                      Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                    State              Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

_____
Name

_____
Address

_____
County, City                    State              Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐  **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

      The defendant discriminated against me because of my (check only those that apply and explain):

        ☐  race: _____

        ☐  color: _____

        ☐  religion: _____

        ☐  sex: _____

        ☐  national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐  did not hire me

☐  terminated my employment

☐  did not promote me

☐  did not accommodate my disability

☐  provided me with terms and conditions of employment different from those of similar employees

☐  retaliated against me

☐  harassed me or created a hostile work environment

☐  other (specify):  _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐    Yes (Please attach a copy of the charge to this complaint.)

    When did you file your charge? _____

☐    No

Have you received a Notice of Right to Sue from the EEOC?

☐    Yes (Please attach a copy of the Notice of Right to Sue.)

    What is the date on the Notice? _____

    When did you receive the Notice? _____

☐    No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐    direct the defendant to hire me

☐    direct the defendant to re-employ me

☐    direct the defendant to promote me

☐    direct the defendant to reasonably accommodate my religion

☐    direct the defendant to reasonably accommodate my disability

☐    direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your
complaint. If you do not consent, please do not attach the form.

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

## Civil case(s) filed in the Southern District of New York:

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

_____
Name (Last, First, MI)

_____
Address          City          State          Zip Code

_____
Telephone Number          E-mail Address

_____
Date          Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

UNITED STATES DISTRICT COURT                                    Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x


                                                **CIVIL CASE DISCOVERY PLAN**

                            Plaintiff(s),       **AND SCHEDULING ORDER**

        - against -



                            Defendant(s).       _____ CV _____ (NSR)



-------------------------------------------------------------x


  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):


1.      All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)


2.      This case [is] [is not] to be tried to a jury.


3.      Joinder of additional parties must be accomplished by _____.


4.      Amended pleadings may be filed until _____.


5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
_____.

7.    Non-expert depositions shall be completed by _____.

       a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be
held until all parties have responded to any first requests for production of
documents.

       b.    Depositions shall proceed concurrently.

       c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-
party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than
_____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave
of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

        _____

                                                        _____

                                                        Nelson S. Román, U.S. District Judge