USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 07/09/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TEKO FOLI,

Plaintiff,

-against-

METRO-NORTH RAILROAD and METRO-NORTH MTA POLICE,

Defendants.

No. 23-cv-5982 (NSR) (JCM)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Teko Foli ("Plaintiff") brings this action asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, and common law negligence against his former employer, Defendant Metro-North Railroad ("Metro-North") and Defendant Metro-North MTA Police ("Metro-North Police") (collectively, "Defendants") resulting in injuries in the nature of, *inter alia*, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").

Plaintiff alleges, in relevant part, that during his employment at the Metro-North, the Defendants and their employees subjected him to a prolonged campaign of harassment, surveillance, and workplace investigations, including the alleged unauthorized monitoring and search of his personal property. Plaintiff further alleges that he suffered physical injuries and severe emotional distress after coming into contact with a prescription pill bottle that he contends was tampered with by Metro-North personnel. Plaintiff further alleges that Defendants thereafter attempted to conceal information relating to the incident and interfered with his efforts to report and document his alleged injuries.

Presently before the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] (ECF No. 138.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are drawn from the TAC, (ECF No. 130), and Plaintiff's opposition papers, (ECF Nos. 140, 146). At this stage, Plaintiff's allegations are taken as true and construed in the light most favorable to Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I. Plaintiff's Employment and Allegations of Harassment

Plaintiff is a Black male who has a master's degree in electrical engineering. (TAC ¶ 2.) In 2013, Defendant Metro-North hired Plaintiff as a "non-agreement" employee in the Maintenance of Equipment Department. (*Id.*) In 2019, Plaintiff was transferred to work as a Field Equipment Engineer, where he worked in a cubicle within an engineering trailer at Metro-North's Croton-Harmon Yard in New York. (*Id.* ¶ 6.)

Plaintiff alleges, in relevant part, that throughout his employment with Metro-North, he was subject to a coordinated "network of harassment" by his supervisors and co-workers based on his race. (*Id.* ¶ 18.) For instance, Plaintiff alleges that he was told that he "could not have had the name Teko Foli if he is black and from Africa and these names are carried by Europeans and therefore Plaintiff stole his name Teko Foli." (*Id.* ¶ 99.) Plaintiff likewise alleges that his "greetings, words, and gestures" were mimicked on a daily basis. (*Id.* ¶ 10.) According to Plaintiff, his supervisors and co-workers treated him as a security threat because he utilized "deadhead"

[1] The court refers to the parties' motion papers as follows: (1) ECF No. 139 ("Defs.' Mem."); (2) ECF No. 140 ("Pl. Opp."); (3) ECF No. 143 ("Defs.' Reply"); (4) ECF No. 146 ("Pl. Surr.").

train cars, which were reserved for Metro-North personnel. (*Id.* ¶¶ 12-13.) Plaintiff subsequently received a two-week suspension of his transportation privileges in October 2021. (*Id.* ¶ 20.)

## II. Workplace Investigations and Alleged Intrusive Searches

In early 2022, Plaintiff alleges that Defendants initiated an internal investigation against him based on false accusations of drug use, ethics violations, and that he posed a security risk. (*Id.* ¶¶ 27–28, 35.) As part of this investigation, Plaintiff claims that he was subjected to extensive surveillance. (*Id.* ¶ 67.) For example, Plaintiff alleges that, beginning in June 2022, his work computer and personal phone were continuously monitored and accessed without authorization. (*Id.* ¶ 36.) Plaintiff further alleges that whenever he stepped away from his cubicle, Metro-North personnel repeatedly subjected his personal work bag to unreasonable searches and that there was evidence of tampering with his flash drives and personal items. (*Id.* ¶ 44.)

## III. June 14, 2022 Prescription Bottle Incident

On June 14, 2022, Plaintiff alleges that he suffered injuries after coming into contact with a prescription bottle that he claims had previously been tampered with by Metro-North personnel. (*Id.* ¶ 55.) Specifically, while working at his cubicle in the engineering trailer, Plaintiff reached into his work bag to move a personal prescription pill bottle. (*Id.*) Plaintiff claims that this bottle had been previously removed and tampered with by the Metro-North Security Department during one of their covert searches before it was returned to his work bag. (*Id.* ¶¶ 44, 55.)

After grabbing the prescription bottle, Plaintiff alleges that he experienced an "instant swarm of tiny live beings that crawled in staple-like movements all over his body while piercing his skin." (*Id.* ¶ 55.) This physical contact allegedly caused Plaintiff to experience a "complete internal body transformation," which left him extremely ill. (*Id.*) Plaintiff attributes numerous medical conditions to this incident, including permanent dry eye syndrome, uveitis, scleritis,

temporary blindness, bleeding gums, memory lapses, and severe emotional distress and mental anguish. (*Id.* ¶¶ 55, 56, 135.)

**IV. Post-Incident Events**

Following the June 14, 2022 incident, Plaintiff alleges that Defendants engaged in a systematic effort to cover up their liability and retaliate against him. (*Id.* ¶ 112.) Specifically, Plaintiff alleges that on June 15, the day following his contact with his prescription bottle, Defendants implemented procedures requiring non-agreement employees to notify supervisors before taking leave. (*Id.* ¶ 57.) According to Plaintiff, these new procedures were designed to strictly monitor his anticipated use of the Family and Medical Leave Act ("FMLA"). (*Id.* ¶ 58.)

Shortly thereafter, Plaintiff took an extended FMLA absence. (*Id.* ¶ 56.) Upon attempting to properly document his FELA injuries, Plaintiff alleges that his supervisors, Craig Gustavson and Maurice Divers, refused to complete the required workplace injury report and that Human Resources obstructed his access to related documentation. (*Id.* ¶ 103.) Finally, Plaintiff alleges that Metro-North Police Investigators Daniel Malarkey and George Giles orchestrated a recorded interview on October 10, 2022, to cover up the Security Department's involvement in his injuries. (*Id.* ¶¶ 111–12.)

**PROCEDURAL HISTORY**

Plaintiff commenced this action on June 12, 2023. (ECF No. 1.) Plaintiff subsequently filed an amended complaint on March 19, 2024, which Defendants moved to dismiss. (ECF Nos. 52, 62.) The Court thereafter granted in part and denied in part Defendants' initial motion to dismiss on March 31, 2025. (ECF No. 113.) In accordance with the Court's Opinion and Order, Plaintiff filed the TAC.[2] (ECF No. 130.) The Court thereafter set a briefing schedule in the event Defendants

[2] The Court notes that Plaintiff filed a proposed second amended complaint without leave of Court. (ECF No. 89.) Plaintiff also submitted a response to his own filings. (ECF No. 100.) In its prior Opinion and Order, the Court declined to consider these filings because they were submitted beyond the scope of what had been permitted. *See Foli*

moved to dismiss the TAC. (ECF No. 121.) Defendants filed their opening papers on August 1, 2025. (ECF No. 139.) The Court received Plaintiff's opposition papers on September 2, 2025. (ECF Nos. 140–141.) Defendants filed their reply papers in further support of their motion on September 15, 2025. (ECF No. 143.) After briefing was completed, Plaintiff sought leave to file a sur-reply, (ECF No. 144.), which the Court granted, (ECF No. 145.) Plaintiff shortly after filed his sur-reply on October 7, 2025 (ECF No. 146.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the district court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry

---

*v. Metro-North Railroad*, 2025 WL 965279, at *3 (S.D.N.Y. March 31, 2025). For purposes of this Opinion and Order, the Court refers to Plaintiff's most recent and operative pleading as the Third Amended Complaint.

is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, district courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, district courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the district court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## II. Section 1983 Claims

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012). A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his constitutional rights. *Ross*, 2012 WL 86467, at *9 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). Additionally, a plaintiff seeking monetary

damages against the defendant must show personal involvement on the part of the defendant in the alleged constitutional deprivation as a prerequisite to recovery under § 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

## III. Federal Employers' Liability Act

FELA provides in relevant part that:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. The statutory purpose of FELA is to focus primarily upon injuries and death resulting from accidents on interstate railroads. *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 194 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)). It imposes a continuous duty on railroad carrier employers to provide a reasonably safe workplace for employees. *DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R.*, 237 F. App'x 642, 645 (2d Cir. 2007).

To plausibly assert a viable FELA claim, a plaintiff must plead sufficient facts to demonstrate that: "(1) he or she sustained an injury, (2) while employed by a carrier engaged in interstate commerce, (3) due to the carrier's negligence, and (4) that such negligence played a role in the plaintiff's injury." *Marchica v. Long Island R. Co.*, 31 F.3d 1197, 1202 (2d Cir. 1994); *see also Tufariello v. Long Island R.R.*, 458 F.3d 80, 87 (2d Cir. 2006) ("In FELA actions, the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation."). "[C]ourts, however, apply a more relaxed standard of both negligence and causation to FELA negligence claims than to those arising under common law." *Coale v. Metro-N. Commuter R.R. Co.*, 621 F. App'x 13, 14 (2d Cir. 2015); *see also Kernan v. Am. Dredging Co.*, 355 U.S. 426, 438–39 (1958) ("The theory of the FELA is that where the employer's conduct falls short of the

high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues."). This reduced burden reflects FELA's remedial "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329 (1958).

## DISCUSSION

Defendants move to dismiss the TAC on several grounds. First, Defendants argue that Plaintiff's Fourth and Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983 should be dismissed because they are duplicative of claims asserted in Plaintiff's subsequently filed actions. (Defs.' Mem. at 12–13.) Second, Defendants contend that Plaintiff fails to state a viable claim under FELA because his allegations do not satisfy the "zone of danger" test governing claims for emotional distress. (Defs.' Mem. at 9–12.) Third, Defendants argue that Plaintiff cannot rely on the doctrine of *res ipsa loquitur* to cure the deficiencies in his negligence claims. (Defs.' Reply at 5–6.) Finally, Defendants assert that Plaintiff's related state-law claims for negligent infliction of emotional distress and intentional infliction of emotional distress fail for substantially the same reasons as his FELA claims. (Defs.' Mem. at 12.) The Court addresses each argument in turn.

### I. Section 1983 Claims

Plaintiff asserts Section 1983 claims pursuant to the Fourth and Fourteenth Amendments. (TAC ¶¶ 139–59.) Defendants, however, do not meaningfully address the merits of Plaintiff's constitutional claims. Defendants instead move to dismiss these claims on the basis that they are duplicative of Plaintiff's two subsequently filed lawsuits.[3] (Defs.' Mem. at 12.) The Second Circuit has long recognized that the first-filed rule and duplicative-suit doctrine generally apply where: (1) a later-filed action duplicates an earlier-filed action; and (2) the court seeks to avoid parallel

[3] After commencing this action, Plaintiff filed two additional actions asserting substantially similar claims, both of which are also pending before this Court. *See Foli v. Metro-North Railroad et al.*, No. 7:24-cv-05148 (S.D.N.Y.); *Foli v. Metro-North Railroad et al.*, No. 7:24-cv-09355 (S.D.N.Y.).

litigation by dismissing or staying the later-filed case. *See Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) (As a general rule, "[w]here there are two competing lawsuits, the first suit should have priority"); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (same); *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986) (same).

As applied here, even assuming that Plaintiff's claims are duplicative of those asserted in his subsequently filed actions, Defendants' argument appears doctrinally misplaced because the Court is addressing Plaintiff's first-filed action. When multiple suits involve the same subject matter, the doctrine targets the subsequent suits to preserve judicial economy, not the original first-filed action. *See Comedy Partners v. St. Players Holding Corp.*, 34 F. Supp. 2d 194, 196 (S.D.N.Y. 1999) (stating that under the first-filed rule, "the second suit should be stayed or dismissed in favor of the first."); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (same); *Santana v. Cavalry Portfolio Servs., LLC*, 2019 WL 6173672, at *2 (S.D.N.Y. Nov. 19, 2019) (same). The Court therefore declines to dismiss Plaintiff's constitutional claims on duplicative-suit grounds.

To the extent Defendants seek dismissal of these claims on other grounds, the Court declines to consider such arguments because Defendants did not move to dismiss the claims on any basis other than duplication. *See, e.g., Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 2016 WL 5719749, at *5 n.3 (S.D.N.Y. Sept. 29, 2016) ("the Court declines to address these arguments in light of Defendants' failure to move to dismiss the fraud claim."); *Seekamp v. Fuccillo Auto. Grp., Inc.*, 2010 WL 980581, at *7 (N.D.N.Y. Mar. 15, 2010) ("In light of . . . Defendants' failure to move to dismiss Plaintiff's individual claims, this Court need not address Plaintiff's individual causes of action at this time."); *Am. Infertility of New York, P.C. v. CNY Fertility, PLLC*,

2021 WL 4803539, at *1 (S.D.N.Y. Oct. 13, 2021) (declining to consider an issue not "adequately briefed" where the defendant failed to address it until its reply brief).

Notwithstanding Defendants' failure to move to dismiss on grounds other than duplicity, Plaintiff's Fourteenth Amendment claim warrants dismissal. Generally, a Fourteenth Amendment claim may proceed under either: (1) procedural due process, which requires the deprivation of a protected liberty or property interest without adequate state remedies, *see Mathews v. Eldridge*, 424 U.S. 319 (1976); or (2) substantive due process, which requires conduct that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). By Opinion and Order, dated March 31, 2025, this Court dismissed Plaintiff's Fourteenth Amendment claims without prejudice due to Plaintiff's failure to identify a specific property or liberty interest allegedly infringed upon or allege conduct which "shocks the conscience." *Foli v. Metro-North Railroad*, 2025 WL 965279, at *6 (S.D.N.Y. March 31, 2025). Although Plaintiff was granted leave to replead, much like in the SAC, the TAC lacks any new allegations in support of the claim. (*See generally* TAC.)

The law-of-the-case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)); *see also In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (noting that while not binding, the law-of-the-case doctrine counsels against a court revisiting prior rulings absent compelling reasons such as the need to correct a clear error or prevent manifest injustice); *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (same). Indeed, even in the context of *pro se* plaintiffs, when an amended complaint "provides no new information that could serve as a 'cogent and compelling' basis for the Court to deviate from its prior ruling," those claims must be dismissed. *See, e.g.*, *Rodriguez v. Westchester*

*Cnty.*, 2025 WL 1939292, at *2 (S.D.N.Y. July 15, 2025) (dismissing Eighth Amendment claims where pro se plaintiff failed to plausibly allege new factual allegations in the amended complaint). Here, Plaintiff has once again failed to identify a specific property or liberty interest allegedly infringed upon, nor allege conduct which shocks the conscience giving rise to a plausible claim. Consequently, Plaintiff's Fourteenth Amendment claim is dismissed with prejudice. However, Plaintiff's Section 1983 claims for alleged violations of the Fourth Amendment survives.

**II. FELA Claims**

Plaintiff seeks recovery under FELA for NIED and IIED. (TAC ¶¶ 160–73.) Specifically, Plaintiff alleges that he suffered severe emotional distress and mental anguish after an incident on June 14, 2022, when he reached into his work bag to grab a personal prescription pill bottle and immediately felt "tiny beings piercing Plaintiff's skin caus[ing] pain, itching, and tremendous fear and distress." (TAC ¶ 55.) As discussed above, FELA provides a remedy for railroad employees seeking recovery for work-related injuries caused by a carrier's negligence. *Sinkler*, 356 U.S. at 329. The Supreme Court distinguishes between two categories when evaluating emotional distress claims under FELA: "(1) stand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test; and (2) emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 147 (2003). Courts in this Circuit consistently apply this standard to evaluate emotional distress claims under FELA. *See, e.g.*, *Goodrich*, 654 F.3d at 198–99 (applying the Supreme Court's limitation on FELA emotional distress claims); *Gallimore-Wright v. Long Island R.R. Co.*, 354 F. Supp. 2d 478, 487 (S.D.N.Y. 2005) (dismissing a FELA emotional distress claim where the plaintiff failed to satisfy either of the *Ayers* frameworks).

Under the first *Ayers* category, a plaintiff seeking to recover for stand-alone emotional trauma must satisfy the common-law "zone of danger" test, which limits recovery to those

plaintiffs who either "sustain a physical impact as a result of the defendant's negligence or are placed in immediate risk of physical impact by that negligence." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 at 547–48 (1994). A cognizable "physical impact" requires more than mere everyday physical contact. *Metro-N. Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 432 (1997). Specifically, it excludes nominal contacts or exposure to substances that pose only a future risk of disease or emotional distress born out of a secondary fear of illness. *Id*. Under the second *Ayers* category, a plaintiff may only claim emotional distress as "parasitic pain and suffering" damages if it flows directly from an actionable, prior physical injury sustained through railroad operations. *Ayers*, 538 U.S. at 148.

At the outset, Plaintiff's claims do not fall within the second *Ayers* category. Under *Ayers*, emotional-distress damages may be recovered as "parasitic pain and suffering" only where they stem from an actionable physical injury. *Ayers*, 538 U.S. at 148. Here, Plaintiff does not allege the type of antecedent physical injury contemplated by *Ayers*. Rather, Plaintiff alleges that he suffered emotional distress and various physical ailments after coming into contact with his prescription bottle on June 14, 2022. (TAC ¶¶ 55–56.) The same alleged incident forms the basis for both his claimed physical injuries and emotional distress. (TAC ¶¶ 56, 160–73.) Moreover, the risk of encountering danger from a personal item inside an employee's personal bag does not fall within the zone of operational hazards that a railroad common carrier has a duty to anticipate or guard against. *See DeRienzo*, 237 F. App'x at 645 (recognizing that FELA imposes a continuing duty on railroads to provide employees with a reasonably safe workplace). Plaintiff therefore cannot proceed under the second *Ayers* category, and the Court instead analyzes his claims under the "zone of danger" framework.

Under the "zone of danger" test, the threshold inquiry is whether Defendants' alleged negligence caused a physical impact or placed Plaintiff in immediate risk of physical impact. *Gottshall*, 512 U.S. at 547–48. Plaintiff's allegations satisfy neither requirement.

First, Plaintiff fails to plausibly allege a cognizable physical impact. Plaintiff alleges that he suffered severe emotional distress and resulting physical injuries after grabbing his prescription pill bottle and experiencing an "instant swarm of tiny live beings." (TAC ¶¶ 55, 135.) Even accepting these allegations as true, the TAC does not plausibly allege the type of physical impact contemplated by *Gottshall* and *Buckley*. The Supreme Court has explained that the "zone of danger" test does not encompass every physical contact experienced in the workplace. *Buckley*, 521 U.S. at 432. Rather, a plaintiff must allege a qualifying physical impact arising from the type of physical dangers that FELA was enacted to address. *See Gottshall*, 512 U.S. at 555. Plaintiff's allegations concerning contact with a personal prescription bottle do not plausibly establish such a qualifying impact.

Nor has Plaintiff plausibly alleged that Defendants' alleged conduct placed him in immediate risk of physical impact. Plaintiff does not allege that Defendants exposed him to moving trains, railroad equipment, hazardous working conditions, or any other imminent physical peril associated with railroad operations. (*See generally* TAC.) Instead, Plaintiff's allegations stem from his suspicion that a Metro-North employee tampered with personal items contained within his own work bag. (TAC ¶¶ 55–56.) Such allegations do not plausibly establish that Plaintiff was placed within the "zone of danger" contemplated by *Gottshall*. This conclusion is consistent with the Supreme Court's repeated recognition that FELA's emotional-distress jurisprudence is directed toward the physical dangers inherent in railroad employment. *See Gottshall*, 512 U.S. at 555. Plaintiff's allegations concerning workplace investigations, surveillance, ridicule, and the alleged tampering of personal belongings do not involve the type of operational hazards addressed by

FELA. (*See* TAC ¶¶ 10, 18, 27–28, 44, 55, 67); *see also Goodrich*, 654 F.3d at 198 (declining to consider FELA recovery to include injuries "occurring outside a zone of physical danger"). Because Plaintiff has failed to plausibly allege either a qualifying physical impact or an immediate risk of physical impact, both of his emotional-distress claims are not actionable under FELA. *See Murphy v. Metropolitan Transp. Authority*, 548 F.Supp.2d 29, 46 (2008) (holding that Plaintiff's allegations were insufficient to satisfy the zone of danger test); *Crooks v. Metro–North Commuter R.R. Co.*, 1994 WL 719683, at *2 (S.D.N.Y. Dec. 28, 1994) (same).

In light of this determination, the Court need not consider Plaintiff's additional allegations concerning workplace investigations, threats, or ridicule, all of which likewise fail to satisfy the "zone of danger" test. (*See generally* TAC.) Courts have consistently held that regardless of how egregious an employer's conduct may be, a plaintiff cannot recover for emotional distress under FELA without satisfying the zone of danger test.[4] *See e.g.*, *Goodrich*, 654 F.3d at 199 (holding that plaintiff failed to state an actionable FELA claim for emotional distress after his HIV-positive status was publicly disclosed by a co-worker because it did not pass the zone of danger test); *Higgins v. Metro-N. R.R. Co.*, 143 F. Supp. 2d 353, 359 (S.D.N.Y. 2001) (dismissing an emotional distress claim arising from severe workplace harassment because the plaintiff was never placed in immediate physical danger); *Milam v. Herrlin*, 819 F. Supp. 295, 303 (S.D.N.Y. 1993) (holding

[4] Plaintiff likewise fails to allege that the injuries he attributes to the prescription bottle were reasonably foreseeable consequences of Defendants' conduct. *See Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 117 (1963) (noting that courts will reject claims arising from risks that do not naturally or foreseeably stem from the industrial operation of a railroad). Nor does he plausibly allege causation. *See Braithwaite v. Equitable Life Assur. Soc. of U.S.*, 232 A.D.2d 352, 353 (1996) ("a defendant is not liable unless the plaintiff can show how the defendant's breach of some duty caused or contributed to the plaintiff's mishap.") Finally, Plaintiff's attempt to hold Defendants liable under a theory of *respondeat superior* fails. (TAC ¶¶ 168–172.) The doctrine requires some nexus between the employee's tortious conduct and the employer's business interests. *See Gallose v. Long Island R. Co.*, 878 F.2d 80, 83 (1989) ("no liability attaches when an employee acts 'entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer.'") Here, Plaintiff does not establish that workplace harassment occurred for the benefit of Defendants' business interests. (*See generally* TAC.)

that a railroad's internal disciplinary investigations and administrative actions lack the physical danger required to trigger FELA liability).

Plaintiff's FELA claims based on his alleged eye injuries, bleeding gums, and memory loss also fail on similar grounds. (TAC ¶¶ 72, 135.) These injuries also incurred as a result of Plaintiff coming into contact with the alleged contaminated pill bottle. (TAC ¶¶ 55–56.) As required by statute, Plaintiff fails to demonstrate that the injuries are the result in whole or in part from the negligence of any of the officers, agents, or employees of Metro-North or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. *See DeRienzo*, 237 F. App'x at 645. Simply stated, Plaintiff does not allege that his injuries are work-related injuries caused by a carrier's negligence. (*See generally* TAC.) At best, Plaintiff alleges that an unknown employee purposefully tampered with and contaminated his pill bottle which he later came into contact. (TAC ¶¶ 55–56.) The mechanism of the injury is inconsistent with the intended purpose of the statute. *See Masiello v. Metro-N. Commuter R.R.*, 748 F. Supp. 199, 202 (S.D.N.Y. 1990) ("The FELA was enacted in response to 'the special needs of railroad workers who are daily exposed to risks inherent in railroad work and are helpless to provide adequately for their own safety.'") (quoting *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958)). Accordingly, the claims must be dismissed.

The Court therefore dismisses Plaintiff's FELA claims with prejudice.[5]

## III. State Law Claims

The TAC similarly raises state law claims for NIED and IIED arising from the same alleged conduct underlying Plaintiff's FELA claims. (TAC ¶¶ 160–173.) Those claims likewise fail.

---

[5] Plaintiff's invocation of *res ipsa loquitur* does not alter this conclusion. (TAC ¶ 167.) The doctrine merely permits an inference of negligence under limited circumstances; it does not excuse a plaintiff from satisfying the substantive requirements governing recovery under FELA. *See St. Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 302 (2d Cir. 1990); *see generally Restatement (Second) of Torts* § 328D (1965). Moreover, Plaintiff's allegations do not plausibly establish that the prescription bottle allegedly causing his injuries was within Defendants' exclusive control. *See Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 272 (1996).

As discussed above, Plaintiff has failed to plausibly allege that Defendants' conduct caused the injuries he attributes to the June 14, 2022 incident. Nor has Plaintiff plausibly alleged facts demonstrating that Defendants exposed him to a cognizable risk of physical harm. Plaintiff's NIED claim therefore fails. Even assuming New York's formulation governs independently of FELA, Plaintiff has not alleged conduct that unreasonably endangered his physical safety. *See e.g.*, *Glendora v. Gallicano*, 206 A.D.2d 456, 456 (1994) (holding that the plaintiff's NIED claim failed because no conduct was alleged that "unreasonably endangered" the plaintiff's physical safety); *Savva v. Longo*, 8 A.D.3d 551, 552 (2004) (same); *Clark v. Elam Sand and Gravel, Inc.*, 4 Misc.3d 294, 296 (2004) (same).

Plaintiff's IIED claim fares no better. Under New York law, IIED is a highly disfavored cause of action and requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (1978) (adopting the Restatement (Second) of Torts § 46 formulation for IIED claims in New York); *see also Howell v. New York Post Co.*, 612 N.E.2d 699, 703 (1993) (describing the requirements of IIED as rigorous and difficult to satisfy); *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 57 (2016) (same). Even accepting the TAC's allegations as true, Plaintiff's claims concerning workplace investigations, surveillance, ridicule, and the alleged tampering of personal belongings do not plausibly rise to the level of extreme and outrageous conduct required to sustain an IIED claim. *See e.g.*, *Ford Motor Credit Co. v. Hickey Ford Sales*, Inc., 94 A.D.2d 902, 903 (finding that Defendant's actions did not rise to the level of extreme and outrageous conduct required to sustain an IIED claim); *Silva v. Children's Rescue Fund*, 2015 WL 2441325, at *5 (N.Y. Sup. Ct. Apr. 30, 2015) (same). Defendants' motion to dismiss is therefore granted with respect to Plaintiff's state law claims.

## IV. Leave to Amend

Finally, the Court must determine whether Plaintiff should be granted leave to amend his pleadings. Courts should give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has instructed that "district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Breer v. Maranville*, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012). If a complaint's deficiencies are "'substantive' as opposed to 'inadequately or inartfully' pled, an opportunity to replead would be 'futile' and 'should be denied.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (cleaned up) ("Amendment is futile when the problem with a plaintiff's causes of action is substantive and better pleading will not cure it.")

*Pro se* Plaintiff requests that the Court grant leave to amend, however, this Court has already afforded Plaintiff an opportunity to amend. (Pl. Surr. at 11.) The Court finds that it would be futile to grant Plaintiff leave to amend the TAC with respect to his FELA claims. While Plaintiff has included a few additional conclusory allegations, these allegations fail to salvage his FELA claims, related state-law emotional-distress claims, or Fourteenth Amendment claims. The Court therefore declines to grant *pro se* Plaintiff's request to amend his FELA and Fourteenth Amendment claims at this time. *See e.g., Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (denying leave to amend where Plaintiff had already amended complaint once and amendment would have been futile.)

## CONCLUSION

For the foregoing reasons, Defendants Metro-North Railroad and Metro-North Police's motion to dismiss the Third Amended Complaint is GRANTED in part and DENIED in part. The Court dismisses, with prejudice, Plaintiff's claims brought pursuant to FELA, related state law claims, and the Fourteenth Amendment claim. The Court, however, denies Defendants Metro-

North Railroad and Metro-North Police's motion with respect to Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 under the Fourth Amendment. The parties are directed to continue conducting discovery. Upon the completion of discovery, the parties shall promptly notify the Court so that a further scheduling order may be entered.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 138.

SO ORDERED.

Dated: July 9, 2026
White Plains, NY

Nelson S. Román, U.S.D.J.